## CIRCUIT COURT OF BALTIMORE CITY

Filed October 21, 1889.

### HENRY BERGE
### VS.
### BALTIMORE CEMETERY CO.

*J. H. Handy, D. M. Reese* and *W. T. Roberts* for plaintiff.

*Marshall & Hall* for defendant.

DENNIS, J.—

The opinion of Judge Brown upon the general demurrer to the bill has left four questions to be determined

at the present hearing, viz: First, as to the fund required to be created by the Act of 1849; second, the charges in the bill in regard to the chapel; third, the charges in regard to the mausoleum, and fourth, the charges as to the fencing and the want of a proper guard. Judge Brown held the defendant must answer as to the three first charges, which has accordingly been done; and it has answered also as to the fourth charge, which was, by agreement of counsel, reserved from consideration at the hearing upon demurrer. Being concluded by his decision, it only remains for me to consider the case as respects these several points, as it stands upon the bill, answer and evidence.

1st. The only relief asked in the bill in regard to the fund required to be created by the provisions of the defendant's charter, is for a discovery. This has been fully gratified by the answers. Moreover the answer alleges that no discovery was ever asked for before the filing of the bill, although the defendant was always willing to furnish the same, and this willingness was made known to the plaintiff before bringing this suit. No proof has been offered to contradict this averment of the answer; hence this disposes of so much of the bill as relates to this branch of the case.

2d. The plaintiff, Henry Berge, is a lot-holder, who sues for himself and all other lot-holders similarly situated; but no others have made themselves parties to the suit. He charges that, at the time of the organization of the company in 1849, and the offering of its lots for sale, the officers of the company, both by oral statements and pictorial representations, held out to purchasers that the cemetery would contain a chapel and mausoleum, and that these representations, upon the faith of which purchases of lots were made, bound the company at all times to keep up a chapel and mausoleum, notwithstanding which, it has torn down the chapel originally erected, and refuses to rebuild one; and the prayer asks that it may be compelled to rebuild. The answer, while denying that any representations were made by the company to any one which would disable it from making any changes or alterations in the structures in the cemetery that might become necessary or expedient from time to time, denies that any representations whatever were ever made to the plaintiff. It admits that a chapel was originally built at a cost of $1,400, which from the time of its erection had been used altogether, perhaps half a dozen times; that for eighteen years prior to its removal not one application had been made for its use; that, finding it thus useless and constantly requiring repairs, the company did, in the exercise of the power and performance of the duty imposed on it by its charter "to remove and alter old buildings," have it torn down and removed many years ago.

The evidence shows that the plaintiff purchased his lot in May, 1886. Now, admitting for the sake of argument, that the representations, pictorial and otherwise, described in the bill, were of a character to make them a part of the contract between the company and those lot-holders to whom they were made, certainly none of them were ever made to this plaintiff. If they were not made to him, upon what principle can he claim the benefit of them? Those to whom he alleges they were made are not here complaining, nor can he complain for them, because, as to these representations, he is not similarly situated. He not only did not buy upon the faith of any such representations, but with full knowledge of the fact that many years previous to his purchase of his lot, the chapel had actually been removed. Moreover, he is bound by the knowledge that the charter gave the company the right "to remove and alter old buildings," in its discretion, and his own deed expressly provides that his rights thereunder are "subject to the conditions and limitations" contained in the charter, and "such rules and regulations now in force, and such other rules and regulations as may be hereafter adopted for the management of said cemetery, made pursuant to the charter."

He is therefore wholly without standing to ask relief as to so much of the bill as relates to the chapel.

In reaching this conclusion, I have fully respected Judge Brown's ruling, which, being made on demurrer, was based upon the assumption that the facts set forth in the bill were true, viz., that the plaintiff was one of those to whom the representations as to having a chapel in the cemetery were made, or similarly situated with them

—a position, as we have seen, not borne out by the evidence.

3d. The bill charges that the mausoleum is a nuisance, owing to the manner in which it is kept, or rather to the lack of attention given to it, in consequence of which offensive odors pervade the grounds; and asks that the company be required to have it properly ventilated and kept in good order.

The evidence shows that the mausoleum was built early in the history of the company, and was a suitable structure at the time. Some evidence has been offered tending to show that a new structure might be built with better ventilation, or that even the present building might, by proper structural changes, be greatly improved in this respect. The evidence also shows, I think, that when Mr. Hermann cleaned out the building in 1884, it was in a very bad condition—such condition as undoubtedly showed great neglect in its proper care. But it is also shown that since that time no such condition of affairs has existed; and while, sometimes in the summer months, when a body has been kept in it too long, an offensive odor even now prevails, it is a consequence inseparable from a building constructed as is this one, considering the purposes for which it is used.

The evidence also shows that the plaintiff has been acquainted with the cemetery for over twenty years. He testifies he lives near it, and has had occasion to go there almost daily during the whole time of his acquaintance with it, his employment being that of a marble cutter, and his work being largely in the cemetery. He has frequently bought other lots there, and, after coping them up with marble, sold them again. His present lot, by virtue of the ownership of which he seeks to maintain this suit, he bought in May, 1886, and in November, 1886, he filed this bill.

Now, under such circumstances, what equity has he to enable him to maintain a standing in this Court?

He alleges the mausoleum is a nuisance by reason of the condition in which it is kept. If the facts sustained this allegation, he should have sought redress through the Criminal Court; for it is a fundamental law that a private individual cannot ask the aid of a Court of equity to abate a nuisance, unless he alleges and proves some special damage to himself, over and above that suffered by the neighborhood generally by reason of it. This the plaintiff has not done.

He cannot complain of the condition of the cemetery in 1884, two years before he bought his lot, because he was not injured thereby; and the proof shows that now, the mausoleum is as well kept as it can fairly be required to be, considering the character of the structure. And what right has the plaintiff to ask to have a different structure? He bought with as full knowledge of the infirmities of the present building as any one could possibly have. There is nothing in the charter of the company, nor in his contract with it, which requires the company to give him a better or a different building than the one already erected. He bought with his eyes open, subject to the then existing condition of the building; and he cannot now complain, unless the situation has changed by reason of the neglect of the company, and the building has since his purchase been allowed to become a nuisance. His remedy is through indictment in the Criminal Court; unless he can show he himself has suffered some special damage thereby, which has not been attempted in this case.

4th. The bill charges that no sufficient guard has been maintained in the cemetery; and no sufficient wall or railing around it; and asks that the company may be compelled to keep "a good and sufficient watch and guard" over its grounds to render the same a safe place of burial, and build a "permanent and substantial wall or railing around said cemetery."

As to the guard, little need be said. Not a word of evidence has been offered to show what would be a proper guard for such a cemetery. It has not been shown how other cemeteries are guarded, or wherein the guard in the case of the defendant is different from that maintained by other companies of a like character. The Court has been furnished no light by which it can be guided, and in the absence of such light it has no judicial knowledge by which it can pass upon such a question. It is a matter which can only be determined by considering the experience of other cemeteries in this connection. It would seem, however, from the evidence, that the guard in

the case of this company has been sufficient in the past; as, during its entire existence of nearly forty years, there has been shown but one case of a grave desecration.

As to the fence: The cemetery is enclosed on its western side by a stone wall, and upon the three other sides by a paling or picket fence. This wooden fence is the one about which complaint is made. The proof is that, with the exception of Greenmount, every cemetery around the city is similarly enclosed. The fence around the defendant's grounds is an old one, and is necessarily, from time to time, owing to the action of storms and natural decay, more or less in need of repairs. These seem to have been made, if not with the utmost diligence, at least with ordinary care, and while the enclosure is not, in its present condition, such a one as might be constructed—if the whole work has to be done anew, I think the evidence shows that it fairly answers its purpose, and is kept in a reasonably fair condition. The grounds are within the police district, and its lines subject to the patrol of the officers of that department. No wooden fence, even if new and of the most approved character, or indeed any enclosure, can be made proof against the possible aggressions of resurrectionists; and there is no contention that the company is required to have any other than a wooden fence. A stone wall would be, perhaps, more desirable; but, so far as desecration of graves by resurrectionists is concerned, it would be no more efficacious to prevent it than a wooden fence; and there is nothing in the charter of the company, in its contract with the plaintiff, to compel it to build one.

When the plaintiff bought his lot, he knew the character and condition of the present enclosure; it has been kept, substantially, in as good a condition as when he bought; and he has no equity in his present complaint in regard to it.

For these reasons the bill will be dismissed, with costs.